UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN EDELMAR ALVA ALVA,<br><br>    Petitioner,<br><br>v.<br><br>POLLY KAISER, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security, PAMELA BONDI, Attorney General of the United States, acting in their official capacities,<br><br>    Respondents. | Case No. 25-cv-06676 (EKL)<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 2 |

Before the Court is Petitioner's *Ex Parte* Motion for Temporary Restraining Order. TRO Mot., ECF No. 2. Petitioner simultaneously filed a Petition for Writ of Habeas Corpus and *Ex Parte* Motion for Temporary Restraining Order against Respondents Acting Field Office Director Polly Kaiser, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pamela Bondi on August 7, 2025. Petitioner asks this Court to (1) order his immediate release from Respondents' custody pending these proceedings, and (2) enjoin Respondents from transferring him out of this District or deporting him during the pendency of the underlying proceedings. *See* Notice of Mot., ECF No. 2. For the foregoing reasons, the TRO is GRANTED as modified below.

## I. BACKGROUND

According to the record before the Court, Petitioner is a 44-year-old husband and father who arrived in the United States from Guatemala in 2018. Petition for Writ of Habeas Corpus ¶ 1, ECF No. 1 ("Petition"). Petitioner fled Guatemala "after he was threatened multiple times, including with a firearm and a machete, by a man who wanted to continue having his way with [Petitioner's] young daughter." *Id*. ¶ 52. After Petitioner and his daughter fled, "that man burned down [Petitioner's] family home, forcing [Petitioner's] wife and son to flee as well." *Id*.

When Petitioner entered the United States, he was "processed by Border Patrol and ICE and after a brief detention, he was released on an order of supervision, with which he always complied." *Id*. ¶ 53. Since his release in 2018, Petitioner was instructed to "check in at the San Francisco ICE office around 10 different times. He did as instructed and has fully complied with supervision requirements." *Id*. ¶ 54. "Based on his order of supervision, he was granted employment authorization and has been working since then. He has no criminal history." *Id*. ¶ 55. Petitioner "has never been determined to be a flight risk nor a danger to the community." *Id*. ¶ 59.

In 2023, Petitioner requested a reasonable fear interview ("RFI") so Petitioner could start his claim for relief from removal. *Id*. ¶ 56. On August 6, 2025, Petitioner and his counsel attended Petitioner's scheduled RFI at the ICE Enforcement and Removal Operations offices at 630 Sansome Street in San Francisco, California. During the RFI, petitioner testified about his fear of returning to Guatemala. *Id*. ¶ 57. Petitioner was notified that the asylum officer found that Petitioner has no reasonable fear, and that he could seek review of this determination while in ICE detention. *Id*. ¶ 58. Petitioner is "currently locked in a temporary holding area at 630 Sansome Street . . . ." *Id*. ¶ 6. An ICE agent informed Petitioner's counsel that he will be transferred to a new detention center soon, possibly by tomorrow, August 8, 2025. *Id*.

On August 7, 2025, this Petition was filed. Petitioner contends that his arrest and detention violate the Due Process Clause of the Fifth Amendment, both substantively (because Respondents allegedly have no valid interest in detaining him) and procedurally (because he was not provided with a pre-detention bond hearing).

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

## III. DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a temporary restraining order without notice set out in Federal Rule of Civil Procedure 65(b)(1) are met in this case. Petitioner's counsel has set out specific facts in a declaration showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition. *See* Fed. R. Civ. Pro. 65(b)(1)(A). Additionally, counsel states that he attempted to contact the

Civil Division Chief at the U.S. Attorney's Office for the Northern District of California on August 7, 2025, and provided a copy of Petitioner's habeas petition by email. *See* Gutierrez Decl. ¶ 3, ECF No. 2-1; *see also* Fed. R. Civ. Pro. 65(b)(1)(B).

Petitioner has demonstrated a likelihood of success on the merits of his claim that his ongoing detention violates his procedural due process rights under the Fifth Amendment. The Due Process Clause entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or detention. *See, e.g.*, *Pablo Sequen v. Kaiser*, No. 25-cv-06487-PCP, 2025 WL 2203419, at *2 (N.D. Cal. Aug. 1, 2025) (collecting cases).

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (cleaned up). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a pre-detention hearing is "likely unconstitutional," that he has "also carried [his] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district and others have concluded under similar circumstances, "the potential harm to [Petitioner]

4

is significant, while the potential harm to the government is minimal." *Pablo Sequen*, 2025 WL 2203419, at *3. At most, the government faces a short delay in detaining Petitioner if it ultimately demonstrates, by clear and convincing evidence, that his detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with . . . a conflict between minimally costly procedures and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Singh v. Andrews*, No. 25-cv-00801, 2025 WL 1918679, at *9 (E.D. Cal. July 11, 2025) (quoting *Hernandez*, 872 F.3d at 996) (cleaned up).

A TRO immediately releasing Petitioner is appropriate here to return him to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, No. 25-cv-00633, 2025 WL 1141279, at *9 (W.D. Wash. Apr. 17, 2025) (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to his likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below. This Order accords with many other recent grants of temporary relief in similar circumstances. *See, e.g.*, *Garro Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (granting temporary restraining order requiring release of asylum seeker and a pre-detention bond hearing before re-arrest), converted to preliminary injunction at __ F. Supp. 3d __, 2025 WL 2084921 (N.D. Cal. July 24, 2025); *Singh*, 2025 WL 1918679, at *10 (granting preliminary injunction); *Doe v. Becerra*, No. 2:25-cv-647-DJC-DMC, 2025 WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (granting temporary restraining order); *see also Diaz*, 2025 WL 1676854 (granting

5

temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody five years); *Garcia v. Bondi*, No. 25-cv-5070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025) (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody six years ); *Enamorado v. Kaiser*, No. 25-cv-4072-NW, 2025 WL 1382859, at *3 (N.D. Cal. May 12, 2025).

Because "there is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003), no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  The Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. *Jorgensen*, 320 F.3d at 919.

## IV. ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's *Ex Parte* Motion for Temporary Restraining Order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter.  Respondents are **ORDERED** to immediately release Petitioner from Respondents' custody and **ENJOINED AND RESTRAINED** from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker, and from removing him from the United States.[1]  This Order shall remain in effect until **Thursday, August 21, 2025, at 9:00 p.m.**

The Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order, and this Order SHALL be served on Respondents such that they receive actual notice as soon as practicable, and Petitioner shall file proof of such service by no later than **Friday, August 8, 2025**.  Respondents shall provide a status report confirming Petitioner's release by **Saturday, August 9, 2025**.

---

[1] Petitioner also asks the Court to order that he remain within the Northern District of California in order to preserve this Court's jurisdiction, but it is well-established that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).

6

Respondents are **ORDERED TO SHOW CAUSE** in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, on **Thursday, August 21, 2025, at 1:00 p.m.** why a preliminary injunction should not issue. Respondents shall file a response to Petitioner's motion by no later than **Thursday, August 14, 2025**. Any reply shall be filed by **Monday, August 18, 2025**.

**IT IS SO ORDERED.**

Dated: August 7, 2025

Eumi K. Lee
United States District Judge