UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN EDELMAR ALVA ALVA,<br>　　　　Plaintiff,<br>　v.<br>POLLY KAISER, et al.,<br>　　　　Defendants. | Case No. 25-cv-06676-RFL<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 2 |

　　　　Juan Edelmar Alva Alva, a Guatemalan citizen, had been previously released from immigration custody after entering the United States in 2018. He has been living and working in the United States with his wife and two young children since that time. In 2023, he filed for withholding of removal on the basis that he fears returning to Guatemala because a powerful community member abused his young daughter and made credible death threats when he attempted to stop the abuse. On August 6, 2025, he attended his scheduled reasonable fear interview ("RFI") for his withholding of removal petition. After a hearing conducted by speaker phone, he was informed that the asylum officer found that he had no reasonable fear and was immediately detained without notice.

　　　　Petitioner filed a writ of habeas corpus and a motion for temporary restraining order seeking release from detention. On August 7, 2025, this Court issued a temporary restraining order requiring the government to release him and enjoining it from re-detaining him without notice and a pre-arrest hearing before a neutral decisionmaker. Before the Court is Petitioner's

request to convert the temporary restraining order into a preliminary injunction. Because the facts necessary to assess this motion are undisputed, and neither party has requested an evidentiary hearing, the matter was taken under submission without oral argument pursuant to Local Rule 7-1(b). For the following reasons, the preliminary injunction is **GRANTED**.

I.  BACKGROUND

Petitioner is a 44-year-old man from Guatemala, who entered the United States for the first time in roughly 2000. After Petitioner was sentenced to ten days in jail for speeding and driving without a license in 2009, ICE placed him into removal proceedings. Petitioner requested and was granted voluntary departure, leaving the United States on January 4, 2011. Petitioner nonetheless reentered the United States and was deported pursuant to a final order of removal in 2013 and again in 2017.

On November 27, 2018, Border Patrol Agents found Petitioner near the border in Antelope Wells, New Mexico, this time with his daughter. DHS reinstated his removal order on December 1, 2018. Instead of being removed, on December 3, 2018, Petitioner was released on an Order of Supervision. In the over six years since his release, the undisputed record is that Petitioner has attended all his required check-ins and interview appointments, with one exception in 2022 that was promptly corrected. He has no other criminal record beyond the traffic offense from 2009 and the unlawful entries described above. He has a work permit and is employed. His local church has submitted a letter of support. He lives with his wife and two young children.

In April 2023, Petitioner requested a withholding of removal—meaning that he was not challenging his final order of removal, but only the determination that he could be removed to Guatemala. As part of his withholding of removal petition, Petitioner attended a reasonable fear interview before an asylum officer on August 6, 2025, which was held via speaker phone. In that interview, Petitioner testified for over two hours about the reasons he fled Guatemala, and why he was afraid to return. Petitioner testified that his young daughter had been abused by a wealthy landowner in their community. When Petitioner confronted the abuser, the man threatened to

kill Petitioner and his family. The man threatened Petitioner's life multiple times, including with a firearm and a machete. After Petitioner fled to the United States with his daughter, the man burned down Petitioner's family home, which forced Petitioner's wife and son to flee as well. After the interview, the asylum officer concluded that Petitioner had no reasonable fear of return to Guatemala. Petitioner has appealed that determination to an immigration judge for review.

Immediately after that interview, as a result of the asylum officer's determination, and pending an immigration judge's review, Petitioner was detained by ICE pursuant to section 241(a)(6) of the Immigration and Nationality Act. On August 7, 2025, Petitioner filed a writ of habeas corpus and a motion for temporary restraining order seeking release from detention. That same day, this Court granted the temporary restraining order requiring the government to release Petitioner and enjoining it from re-detaining him without notice and a pre-arrest hearing before a neutral decisionmaker. That temporary restraining order was to remain in effect until August 21, 2025, at 9:00 p.m. Petitioner was released from detention on August 8, 2025.

## II.    LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that [1] [s]he is likely to succeed on the merits, [2] that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in h[er] favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). The final two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III.    DISCUSSION

### A.    Likelihood of Success on the Merits

The Due Process Clause prohibits deprivations of life, liberty, and property without due

process of law.  U.S. Const. amend. V.  It is firmly established that these protections extend to noncitizens present in the United States.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("It must be concluded that all persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth Amendment], and that even aliens shall not . . . be deprived of life, liberty, or property without due process of law."); *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.").  Petitioner is likely to succeed on the merits of his claim that the Due Process Clause entitles him to a hearing before he may be re-detained.[1]

### 1.   Section 1231(a) Does Not Require Petitioner's Mandatory Detention.

The government's principal argument is that Petitioner's detention is required by 8 U.S.C. § 1231(a), which provides for mandatory detention of a noncitizen, without a prior bond hearing, for a 90-day removal period following the reinstatement of a prior order of removal. The government argues that after the asylum officer determined that Petitioner had no credible fear, Petitioner could be detained without a bond hearing because Petitioner was still within the 90-day removal period.

However, under § 1231(a)(1)(B), the removal period begins on the latest of the following: (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."  The second

---

[1] Petitioner also brings a substantive due process challenge to his detention, arguing that because dangerousness and flight risk are the only two legitimate reasons for immigration detention and neither rationale supports his detention, the government has no legitimate purpose for detaining him.  Because granting a preliminary injunction enjoining the government from detaining Petitioner without a pre-detention hearing obviates the threat of any imminent deprivation of his substantive due process rights, this order does not reach his substantive due process claim.

4

and third prongs are inapplicable, as there has been no stay or non-immigration detention that expired within the last 90 days. The first prong is likewise inapplicable. Petitioner's removal order did not become administratively final within the last 90 days, but became final long ago. Petitioner's 90-day removal period began to run on December 1, 2018, the date that his removal order was reinstated after his reentry into the United States. *See* 8 U.S.C. § 1231(a)(5) (providing that a prior removal order "is reinstated" upon DHS's finding that the noncitizen "has reentered the United States illegally after having been removed"). His credible fear interview does not affect the date on which his removal became administratively final. "[T]he [administrative] finality of the order of removal does not depend in any way on the outcome of the withholding-only proceedings." *Johnson v. Guzman Chavez*, 594 U.S. 523, 539 (2021). As such, neither Petitioner's April 2023 request for withholding of removal, nor the subsequent determination by the asylum officer, would restart the 90-day removal clock.

Petitioner is therefore not subject to mandatory detention under § 1231(a). Instead, where a noncitizen does not leave or is not removed within the 90-day removal period, the individual, "pending removal, shall be subject to supervision." 8. U.S.C. § 1231(a)(3). As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention. Noncitizens who are inadmissible, such as due to a prior reentry after removal, "may be detained beyond the [90-day] removal period," but § 1231 does not mandate their detention. *See id.* § 1231(a)(6).

### 2. Petitioner Has a Protected Liberty Interest in Remaining Out of Custody.

Petitioner has a protected liberty interest in remaining on release, rather than being detained. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Generally, the Due Process Clause "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Even individuals who face significant constraints on their liberty or over whose liberty the

5

government wields significant discretion retain a protected interest in their liberty. *See Guillermo M.R. v. Kaiser*, No. 25-cv-95436-RFL, 2025 WL 1983677, at *4–6 (N.D. Cal. July 17, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."); *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017) (holding that re-detention after pre-parole conditional supervision requires a pre-deprivation hearing); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[] to live up to the . . . conditions [of release]." *Morrissey*, 408 U.S. at 482. "[T]he liberty [of a person released from government custody] is valuable and must be seen as within the protection of the [Due Process Clause]." *Id.*

Thus, even when ICE has the initial discretion to detain or release noncitizens, after those individuals are released from custody, they have a protected liberty interest in remaining out of custody. *See Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021); *Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega*, 415 F. Supp. 3d at 969 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

Applying these principles, Petitioner has a protected liberty interest in remaining out of custody, as he has since December 2018. Petitioner has a work permit and is employed. He

6

lives with his wife and two young children, whom he supports. Petitioner also attends a local church. These relations of support and interdependence underscore the high stakes of his liberty. The government nonetheless suggests that Petitioner has no liberty interest because the Supreme Court has previously found a period of detention of 90 days to be "presumptively reasonable." (Dkt. No. 11 at 9[2] (quoting *Zadvydas*, 533 U.S. at 701).) *Zadvydas*, however, addressed the *length* of permissible detention, not what process is necessary to protect non-citizens' liberty interest when the government seeks to return them to custody. Instead, *Morrissey* addresses that issue, explaining that the deprivation is a "grievous loss" that can be taken away only upon review at a hearing before a neutral arbiter, regardless of whether government agents otherwise have statutory authority to re-detain an individual. *Morrissey*, 408 U.S. at 482, 489. Nothing in *Zadvydas* overrules that reasoning or otherwise provides the government with carte blanche to re-detain noncitizens without any process so long as the detention lasts under three months.

### 3. A Pre-Deprivation Hearing Before a Neutral Adjudicator Is Likely Required Before Any Re-Detention of Petitioner.

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022).[3] The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's

---

[2] Citations to page numbers refer to the ECF pagination.

[3] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test to a procedural due process challenge to detention under section 1226(a), explaining that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." 53 F.4th at 1207. Although the Ninth Circuit "assumed without deciding" that *Mathews* applied, it noted that other circuits have applied *Mathews* in considering due process challenges to immigration detention, *see, e.g., Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020); and that the Ninth Circuit has regularly applied *Mathews* in due process challenges to removal proceedings, *see, e.g., Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004). *See also Doe v. Becerra*, 704 F. Supp. 3d 1006, 1016 (N.D. Cal. 2023) (discussing the applicability of *Mathews* to due process challenges to immigration detention), abrogated on other grounds by *Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024).

7

>     interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. Each of the three *Mathews* factors supports Petitioner's constitutional right to a hearing before a neutral decisionmaker prior to any future detention.

As explained above, Petitioner has a substantial private interest in remaining out of custody. He has an interest in remaining in his home, continuing his employment, providing for his family, maintaining his relationships in the community, and continuing to attend his church. *See Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025) (cleaned up) (holding that petitioner had a substantial private interest in remaining out of custody where it would enable to him to "work[], liv[e] at home, and be[] with family and friends to form the enduring attachments of normal life"); *Ortega*, 415 F. Supp. 3d 963 (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community); *Morrissey*, 408 U.S. at 482.

Additionally, Petitioner's release from ICE custody on December 12, 2018, reflected a determination by the government that he was neither a flight risk nor a danger to the community, and Petitioner has a strong interest in remaining at liberty unless he no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017*), aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Petitioner was apprehended by ICE officers when he crossed the border into the United States on December 1, 2018. ICE then released him under an Order of Supervision. Though the government now argues that ICE released him because of a lack of available bed space, ICE was

8

not authorized to release Petitioner if he was a danger to the community or a flight risk. As such, the Court must infer from Petitioner's release that ICE determined he was neither. Against that backdrop, Petitioner's release from ICE custody constituted an "implied promise" that his liberty would not be revoked unless he "failed to live up to the conditions of [his] release." *Morrissey*, 408 U.S. at 482. Petitioner justifiably relied on that implied promise in obtaining employment, taking on financial responsibility for his family members, and developing community relationships. The over six years that he has spent out of custody since ICE initially released him have only heightened his liberty interest in remaining out of detention.[4] Accordingly, Petitioner's private interest in retaining his liberty is significant.

Turning to the second *Mathews* factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide him with a pre-detention hearing. Where, as here, "[the petitioner] has not received any bond or custody . . . hearing," "the risk of an erroneous deprivation [of liberty] is high" because neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for his detention. *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679 (E.D. Cal. July 11, 2025) (cleaned up). Civil immigration detention is permissible only to prevent flight or protect against danger to the community, *see Zadvydas*, 533 U.S. at 690, but the government has offered no evidence—including in the proceedings before this Court—that his detention would serve either purpose.

Indeed, the evidence before the Court suggests the government may have difficulty establishing such a basis: Petitioner has attended every required immigration check-in since

---

[4] Although *Rodriguez Diaz* noted that the liberty interests of noncitizens may be limited in ways that those of citizens could not because of the government's countervailing interest in immigration enforcement, it reaffirmed the longstanding principle that noncitizens have liberty interests protected by the Fifth Amendment. 53 F.4th at 1205–07. And the liberty interests at stake here differ from those considered in *Rodriguez Diaz*. The petitioner in *Rodriguez Diaz* had been transferred directly into ICE custody after serving a term of imprisonment in state prison following a state felony conviction. While that petitioner retained a liberty interest in being released from detention, as the Ninth Circuit acknowledged, that interest was markedly different from the liberty interest possessed by an immigrant like Petitioner whom ICE has permitted to develop an out-of-custody life in the United States over a period of more than six years.

2018, with one exception that was quickly corrected, and has no criminal history beyond the 2009 traffic offense and the unlawful reentries into the United States. Under these circumstances, there is a significant risk that even the two-day curtailment of liberty that Petitioner already suffered upon his re-detention by ICE was not justified by any valid interest. Moreover, where Defendants have taken the likely erroneous position that Petitioner is subject to mandatory detention under § 1231(a), the risk of erroneous deprivation is all the more significant. Providing Petitioner with the procedural safeguard of a pre-detention hearing will have significant value in helping ensure that any future detention has a lawful basis.

More fundamentally, there is no countervailing government interest—the third and final *Mathews* factor—that supports conducting a bond hearing only after Petitioner has been detained, rather than in advance thereof. The government has articulated no legitimate interest that would support arresting Petitioner without a pre-detention hearing. Since ICE's initial determination over six years ago that Petitioner should be released, the circumstances do not appear to have changed. Although the government now argues that it has an interest in preventing noncitizens from violating the United States' immigration laws, and that individuals who have reentered the county illegally demonstrate a greater willingness to violate those laws, Petitioner's history of reentries was a known fact at the time that Petitioner was last released by ICE. To the contrary, since December 2018, Petitioner has attended virtually all of his regular check-ins, has remained employed, and has become a valued member of his local church. There is furthermore no evidence in the record that any urgent circumstances warrant re-detaining Petitioner without awaiting a hearing.

Nor can the government suggest that the burdens of providing such protections would be fiscally or administratively onerous. If the government wishes to detain Petitioner, it need only provide a hearing before a neutral decisionmaker. "In immigration court, custody hearings are routine and impose a minimal cost." *Singh*, 2025 WL 1918679, at *8 (cleaned up).

In short, each of the *Mathews* factors favors Petitioner. He has therefore shown a likelihood of success on the merits of his claim that the Due Process Clause entitles him to a

bond hearing before an immigration judge prior to any re-arrest or detention.

### B. Irreparable Harm

Petitioner is also likely to suffer immediate and irreparable harm in the absence of preliminary injunctive relief. He faces the risk of immediate re-detention by ICE, likely in violation of his constitutional rights and with potentially serious consequences for his economic livelihood for himself and his family.

The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir.) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (cleaned up). Petitioner is out of ICE custody only because of a court order, and the government has given no assurance that he will not face immediate re-detention in the absence of an injunction. "[I]t follows inexorably from our conclusion" that Petitioner's re-detention without a pre-detention hearing before a neutral decisionmaker is "likely unconstitutional," and that he has "carried his burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

Further, Petitioner is likely to suffer material consequences if re-detained. The Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Id.* Petitioner will suffer additional harms from continued detention, including loss of income that will affect his ability to provide for his family and the inability to be present for his young children and spouse.

### C. Balance of Equities and Public Interest

The final two *Winter* factors, the balance of the equities and public interest, merge in light of the fact that the government is the opposing party. These factors also weigh heavily in

favor of granting a preliminary injunction.  "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) (quoting *Padilla v. Immigration & Customs Enforcement*, 953 F.3d 1134, 1147–48 (9th Cir. 2020)) ("It is always in the public interest to prevent the violation of a party's constitutional rights."); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").  As other courts in this district have concluded under similar circumstances, the potential harm to Petitioner is significant—he faces immediate and potentially prolonged ICE detention, putting his family's financial well-being at risk—while the potential harm to the government is minimal.  The only potential injury the government faces is a short delay in detaining Petitioner if it ultimately demonstrates to a neutral decisionmaker by clear and convincing evidence that his detention is necessary to prevent danger to the community or flight.  *See Jorge M. F*, 2021 WL 783561; *Diaz*, 2025 WL 1676854.  The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  "Faced with . . . a conflict between minimally costly procedures and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor."  *Singh*, 2025 WL 1918679, at *9 (quoting *Hernandez*, 872 F.3d at 996) (cleaned up).

## IV.     CONCLUSION

For the foregoing reasons, the Court grants Petitioner's request for a preliminary injunction.  The Court exercises its discretion under Rule 65(c) to dispense with the filing of bond, as the government provides no evidence of the specific costs it will incur due to Petitioner's release.  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  The government may not re-detain Petitioner during the pendency of these proceedings without providing him

with a pre-detention hearing before an immigration judge to evaluate whether his re-detention is warranted based on flight risk or danger to the community.

**IT IS SO ORDERED.**

Dated: August 21, 2025, at 11:01 a.m.

RITA F. LIN
United States District Judge